541 P.2d 392

**FIRST NATIONAL BANK OF ARIZONA, a national banking association, Petitioner,**

v.

**SUPERIOR COURT OF MARICOPA COUNTY, Arizona, and the Honorable Irwin Cantor, Respondents,**

and

**Johnny A. CORDOVA and Maria Sally Cordova, husband and wife, and Joe Allen Sumrall and Nancy J. Sumrall, husband and wife, Real Parties in Interest.**

No. 12130.

Supreme Court of Arizona, In Banc.

Sept. 25, 1975.

Streich, Lang, Weeks, Cardon & French by Earl E. Weeks, John J. Dawson and William C. Keiper, Phoenix, for petitioner.

Philip M. Haggerty, Phoenix, for real parties in interest.

Ryley, Carlock & Ralston, Rawlins, Ellis, Burrus & Kiewit by James D. O'Neil, Phoenix for amicus curiae The Ariz. Bank and The Valley Nat. Bank.

Sandor O. Shuch, Paul Rybarsyk, Phoenix, for amicus curiae Maricopa County Legal Aid Society.

CAMERON, Chief Justice.

This is a petition for special action in which we are asked to vacate an order entered on 20 May 1975, by the Honorable Irwin Cantor denying the request of the petitioner, First National Bank of Arizona, that the defendants, Joe Allen Sumrall and Nancy Sumrall, husband and wife, be ordered to deliver a 1971 Carriage House Mobile Home to the bank. We took jurisdiction because of the importance of this question to secured creditors in light of our decision in *Thornton v. Industrial Sewing Machine Exchange,* 111 Ariz. 490, 533 P.2d 657 (1975).

We must answer the following question: Is there a common law right of prejudgment replevin in Arizona?

The facts necessary for a determination of this matter are as follows. On 3 February 1971 the respondents Johnny A. Cordova and Maria Sally Cordova, husband and wife, entered into a written agreement with Arileo Mobile Housing, Inc., to buy a 1971 Carriage House Mobile Home. The contract was assigned to the bank. The purchase price was $5,610.80, $800 to be paid at the time of contract and the remainder in 95 equal successive monthly installments of $86.42 commencing 15 April 1971. The agreement provided that, in the event of default, the bank was entitled to take immediate possession of the mobile home. The bank perfected its security interest by filing copy of the agreement with the Arizona Highway Department, as required by the Arizona Uniform Commercial Code. On 16 July 1974, the Cordovas, by way of a transfer of equity and security and with the approval of the bank, transferred their interest in the mobile home to the Sumralls. At the time of the action in the trial court, the Sumralls were five months in arrears.

On 7 May 1975, the bank filed a complaint in Superior Court (No. C–312641) against the Cordovas and the Sumralls asking for a money judgment plus possession of the mobile home.

Concurrently with the filing of the complaint, the bank also filed an application for order to show cause why the court should not enter an order giving the bank possession of the mobile home. The Sumralls were duly served on 12 May 1975, and a hearing was held before the Honorable Irwin Cantor on 16 May 1975.

The trial court denied the bank's request for prejudgment possession of the mobile home. The court's stated reason was this court's decision in Thornton, *supra,* which held that Arizona's replevin statute, A.R.S. § 12–1301 et seq., is contrary to the Fourteenth Amendment of the United States Constitution as interpreted by the United States Supreme Court in *Mitchell v. W. T.*

*Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). This immediately raises the question to be resolved in this special action. Assuming that the United States Constitution guarantees have been met regarding an independent judicial determination between the debtor and creditor before the order of taking and that an immediate hearing to determine possession is available, *Mitchell v. W. T. Grant Co., supra,* is the bank then entitled to prejudgment possession of the mobile home based on a common law right of prejudgment replevin?

Our statute reads:

"§ 1–201. Adoption of common law; exceptions

"The common law only so far as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people thereof, and not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state, or established customs of the people of this state, is adopted and shall be the rule of decision in all courts of this state."

Replevin at common law was an action for the return of goods wrongfully taken. Typically, it was used after a landlord had seized possessions from a tenant to satisfy a debt allegedly owed. If the tenant then instituted a replevin action and posted security, the landlord could be ordered to return the property at once, pending a final judgment in the underlying action. See T. Plucknett, A Concise History of the Common Law, 279–280 (1929). At common law, if a creditor wished to invoke state power to recover goods lawfully taken, as in a bailment, but wrongfully detained, he had to proceed through the action of debt or detinue. These actions, however, did not provide for a return of the property before final judgment. See 2 F. Pollock and F. Maitland, The History of English Law, 173–176 (1952).

The New Mexico Supreme Court, discussing the difference between replevin and detinue at common law, stated:

"Replevin at common law was maintainable in cases where there was an unlawful taking and an unlawful detention of personal property. Detinue at common law was maintainable for the recovery of personal property in all cases where there was an unlawful detainer, regardless of the manner of taking. In replevin there was a seizure under a writ of replevin of the subject-matter of the litigation at the beginning of the proceeding. In detinue recovery of the property was had only after judgment." *Troy Laundry Machinery Co. v. Carbon City Laundry Co.,* 27 N.M. 117, 119, 196 P. 745, 746 (1921).

And the courts have refused to extend common law replevin to include those situations where defendant came into possession of the chattel lawfully and thereafter unlawfully detained it.

"Although this remedy (replevin) may be prompt, efficacious and beneficial, and in many cases the only one giving the necessary relief to a party having a right to the possession of chattels, I do not feel at liberty, entertaining, as I do, a clear conviction that a tortious taking is necessary by the common law as the ground of the action, to indulge in judicial legislation for the purpose of enlarging the scope of the action." *Harwood v. Smethurst,* 29 N.J.L. 195, 205–206, 80 Am.Dec. 207 (1861).

Only by statute, at a later point in time, were the common law actions of replevin and detinue merged into one remedy, prejudgment replevin, which would permit the recovery or repossession of property lawfully acquired but wrongfully detained. See Common Law Pleading, Koffler and Reppey, 249–252, 256 (1969).

■ Prior to 1972 all fifty states had enacted replevin statutes. In Arizona, creditors, for many years, had employed the Arizona replevin statute, A.R.S. § 12–1301 et seq., as a method for quickly re-

covering possession of the subject matter of an installment sales contract, when the debtor had failed to make the payments required by the contract. The purpose of prejudgment replevin proceedings is to enable a plaintiff to seize the property prior to entry of judgment against defendant.

"Creditors utilize prejudgment seizure procedures for a number of reasons, including: (1) to obtain security with which to satisfy the future judgment, [and] (2) to guarantee that the defendant will neither abscond nor further damage or devaluate the property through continued use * * *." Constitutional Law—Creditor-Debtor Law: Procedural Due Process and Washington's Prejudgment Seizure Procedures— *Fuentes v. Shevin,* 407 U.S. 67 (92 S.Ct. 1983, 32 L.Ed.2d 556) (1972), 48 Washington Law Review 646, 648 (1973).

This court has held, however, the Arizona replevin statute unconstitutional stating:

"We therefore hold that our replevin statute is contrary to the Fourteenth Amendment to the United States Constitution as interpreted by the United States Supreme Court. *Mitchell* and *North Georgia Finishing, Inc.,* supra." *Thornton v. Carson,* supra, 111 Ariz. at 492, 533 P.2d at 659.

With the Arizona replevin statute thus rendered inapplicable, the bank is left with the common law right of replevin. It is apparent from the facts in this case that they cannot prevail under either the common law right of replevin or detinue. The bank, however, would have this court rewrite by judicial decision (or legislation) the replevin statute, A.R.S. § 12–1301 et seq., to conform to the constitutional mandates. This we cannot do.

The Arizona replevin statute, A.R.S. § 12–1301 et seq., which was declared unconstitutional in Thornton, *supra,* cannot be rewritten by this court. Such a task is a legislative not a judicial function, and we must defer to the legislative judgment. *Thorp Credit, Inc. v. Barr,* Iowa, 200 N.W.2d 535 (1972), cert. dismissed 410 U.S. 919, 93 S.Ct. 978, 35 L.Ed.2d 581 (1973); *Olympic Forest Products, Inc. v. Chaussee Corporation,* 82 Wash.2d 418, 511 P.2d 1002 (1973). We agree with the statement of the California Supreme Court:

"If the scope of a statute cannot be limited to situations to which it may constitutionally apply except 'by reading into it numerous qualifications and exceptions' amounting 'to a wholesale rewriting of the provision,' the statute cannot be saved by judicial construction but must be declared invalid. (*Fort v. Civil Service Commission,* 61 Cal.2d 331, 340, 38 Cal.Rptr. 625, 630, 392 P.2d 385, 390 (1964). This court cannot, as already pointed out, in the exercise of its power to interpret, rewrite the statute. If this court were to insert in the statute all or any of the above qualifying provisions, it would in no sense be interpreting the statute as written, but would be rewriting the statute in accord with the presumed legislative intent. That is a legislative and not a judicial, function." *Blair v. Pitchess,* 5 Cal.3d 258, 282, 96 Cal.Rptr. 42, 59, 486 P.2d 1242, 1259 (1971).

The common law remedy of replevin applies only in those cases where there is a tortious taking of property. Since the original taking of the mobile home by the Cordovas and subsequent transfer to the Sumralls was lawful, the common law remedy of replevin was not applicable to this fact situation. We conclude that there is no common law right of prejudgment replevin in Arizona when the subject matter of the dispute, although wrongfully detained, is lawfully acquired by defendant. This court might recognize the use of common law replevin in those cases involving a tortious taking of property, such as one involving possession as a result of fraud. However, absent a tortious taking, prejudgment replevin is not available under common law or by statute which, in this case, has been declared invalid.

It is therefore ordered that the relief requested by petitioner is denied.

LOCKWOOD, HAYS and HOLOHAN, JJ., concur.

STRUCKMEYER, J., did not participate in the determination of this matter.

Note: Justice FRANK X. GORDON, Jr., did not participate in the determination of this matter and retired Justice LORNA E. LOCKWOOD sat in his stead.